IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK BUCHANAN and DALE HOOVER<br>Plaintiffs,<br><br>vs.<br><br>STERLING CONSTRUCTION COMPANY INCORPORATED, TEXAS STERLING CONSTRUCTION COMPANY, and MILTON SCOTT<br>Defendants. | § § § § § § § § § § § | Civil Action No. 4:16-cv-3429<br>JURY |

## ORDER

Before the Court is plaintiffs' motion (Dkt. 67) asking the Court to overrule certain claims of privilege asserted by Sterling Construction Company, Inc. and Texas Sterling Construction, Co., and to order the defendants to produce approximately 125 additional documents. Plaintiffs have narrowed their requests to three categories of emails:[1]

1) 84 emails authored by or received by plaintiffs;

2) 19 emails related to the Sirius Investigation;

3) 54 emails related to the NTTA and CTMC projects.[2]

Addressing the first category, defendants have refused to produce emails authored by or received by plaintiffs when they were employed by defendants because they were

---

[1] Defendants third amended privilege log (Dkt. 87-1) list 241 emails and attachments that were withheld, along with two pages of handwritten notes. Plaintiffs do not seek production of the handwritten notes.

[2] Defendants authored or received 32 emails discussing these projects, so there is some overlap between category 1 and 3.

under the "umbrella" of defendants' privilege. Defendants insist the emails are privileged attorney communications and/or attorney work product. The burden is on defendants to show the attorney client privilege or the work product protection is applicable. *United States v. Rodriquez*, 948 F.2d 914, 916 (5th Cir. 1991) (stating that the burden of establishing the attorney-client privilege always rests on the party claiming it). Defendants have pointed to no authority to support their insistence that a party cannot obtain copies of emails he himself authored or received merely because that communication involved an attorney.

The attorney-client privilege "protects disclosure of confidential communications between the client and attorney." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir.1975) ("the communication relates to a fact of which the attorney was informed (a) by his client (b) *without the presence of strangers*")(emphasis added). Defendants' argument fails at this step. Because plaintiffs were parties to the communications, those communications were not confidential as to them. Even if these emails might be protected by the work product privilege, that privilege was necessarily waived for any email authored by or received by plaintiffs because it was actually disclosed to them. *See Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 136 (E.D.Tex. 2003)(noting that work product privilege is waived if the work-product is disclosed to adversaries).

Plaintiffs next seek production of emails[3] regarding the Sirius investigation because "Sterling and TSC have put Sirius Solutions' investigation at issue as their purported reason for terminating Plaintiffs . . . ." Plaintiffs contend that defendants are "hid[ing] communications with a third party about that investigation," because it will show that "Sirius was acting on the instructions of Sterling." The Court agrees that plaintiffs are entitled to discover any communications made to or from Sirius about its investigation into the $5,000 advance to Simon Diaz. Defendants claim they have produced all such communications, and that is supported by the privilege log entries. The entries identified by plaintiffs include 15 emails between defendants and outside counsel at the law firm of Andrews & Kurth, 3 emails from Sterling's in-house counsel, and one email (Priv. Id 106), between Sterling's employees; none of these emails were sent to or from Sirius or any other third person.

Because these communications did not include a third party, the attorney client privilege was not waived for the emails sent to or received from Sterling's attorney. The Court declines to find "subject matter" waiver extending to these communications when they were not made to or from Sirius. The fact that defendants were communicating internally, or with their attorney, about the investigation does not support plaintiffs' contention that "the Defendants or their attorneys were assisting in drafting or modifying the report."

---

[3] The Court notes that it is not entirely clear what documents plaintiffs seek in this category because their motion (Dkt. 67) and reply (Dkt. 95) contain different lists, with some overlap, of documents on the privilege log that fall in this category. The court assumes plaintiffs seek only the materials identified in the most recent (Dkt. 95) filing as that reply "reduce[d] the issues for the Court's consideration."

3

The remaining email is not protected by the attorney-client privilege, but instead is covered by the work product privilege. It is not sent to or from an attorney, nor does it indicate in any way that the author, Kevin Manning, is relaying advice or an opinion from an attorney. Rather, it is a discussion of Sterling's strategy in the litigation involving Star Operations. Because it contains the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party," it qualifies for protection under the work product privilege. *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000). Plaintiffs have not established the privilege was waived for this email, nor do they explain how it is relevant to the Sirius investigation.

The final category is emails related to the NTTA and CTMC projects. Plaintiffs argue that defendants have waived any claims of privilege regarding these emails because they disclosed other communications on those topics. They insist that defendants produced draft memoranda and communications regarding the NTTA projects and therefore waived privilege for any communication related to the NTTA project. They also contend that defendants' experts claim there was "sufficient legal documentation to support the claim accounting" and these emails are needed to test the truth of these opinions. Plaintiffs' argument is too broad.

When the privilege is waived by using that information in self-defense, "fairness dictates that the waiver should be narrowly construed" and only applies to communications on the specific topic of the representation actually disclosed. *Apex Mun. Fund v. N-Grp. Sec.*, 841 F. Supp. 1423, 1430 (S.D.Tex. 1993). Here, the specific topics identified by plaintiffs as the basis for the waiver are the NTTA memoranda prepared by

4

Mark Buchanan and Vernon Howerton. *See* Dkt. 67, p. 11; Dkt. 95, p. 6. All of the emails identified by plaintiffs as related to the NTTA project, except for one (Priv. Id. 80), were sent by or to plaintiffs and will be produced as discussed earlier. The remaining email was sent six weeks after the Howerton memorandum was prepared and appears to have no direct connection to that issue, so it will not be produced. For the emails identified by plaintiffs as relating to the CTMC project, there are eighteen entries which were not written by or sent to plaintiffs.[4] They are each identified as a "communication regarding settlement strategy related to CTMC." Assuming defendants waived any privileges for the memoranda that have been disclosed, these emails are unrelated to those memoranda. They were prepared after the memoranda and discuss settlement strategy.

The final two items plaintiffs seek to compel are redacted "dispute register entries" prepared by Michael Duffy revealing information for only three projects. (Priv. Id. 160 & 184). Plaintiffs argue these entries are relevant to the question of whether there was sufficient legal support for the claim accounting because they will show if there was "progress made on recovering any of the claims at issue in this case." They correctly note that these emails are neither sent to nor received from an attorney so the attorney-client privilege does not apply. Plaintiffs failed to address defendants' assertion of the work product privilege over these materials. Defendants described these emails to be "communication regarding ongoing litigation matters, arbitrations and other disputes and deadlines/next steps related thereto." Plaintiffs have not argued, nor shown, that the work product privilege was waived for the "dispute registries," or that the information sought

---

[4] Priv. Id. 234-35, 249, 260-61, 263, 266, 269-70, 273-74, 294-95, 297-99, 301, 303.

5

can only be obtained from these materials. Regarding plaintiffs' argument that it needs these emails to "test" the truth of the experts' position, they have not shown that these emails or "dispute registries" are the type of "legal documentation to support the claim accounting" the experts were discussing.

Accordingly, the Court grants in part, and denies in part, plaintiffs' motion (Dkt. 67).

Defendants are ordered to produce all emails listed in the privilege log sent by or received by plaintiffs by Friday, March 23, 2018;

All other requested relief is denied.

Signed at Houston, Texas on March 12, 2018.

Stephen Wm. Smith
United State Magistrate Judge